**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JEROME HOLLIE,                    )    No. CV-06-385-TUC-CKJ
                                  )
        Petitioner,                )
                                  )
vs.                               )    **ORDER**
                                  )
J. STERNES, et al.                )
                                  )
        Respondents.               )
                                  )
                                  )
_____   )

    Pending before this Court is Petitioner's Motion for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 [Doc. #1]. Respondents have filed an Answer [Doc. #18] and Petitioner has filed a Traverse [Doc. #20].

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    The Court of Appeals of Arizona stated the facts[1] as follows:

        [On November 12, 1996,] D., P., and J. were cooking dinner at J.'s trailer when [Jerome] Hollie entered through an unlocked screen door and ordered them at gunpoint to back down the hallway to the master bedroom.

---

    [1]As these state court findings are entitled to a presumption of correctness and Hollie has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings. 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, — , 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007)*; Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

Once there, Hollie instructed D., P., and J. to lie face down on the floor. Hollie then began rummaging around the bedroom, looking for money and "the box."[2] Hollie told J., "I'm gonna say it one more time, b----h, where's the money?" When J. failed to respond, Hollie shot her in the head, killing her. Hollie then left and D. called the police.

Respts.' Exh. "A" at 2.

A jury convicted Jerome Hollie ("Hollie") of first-degree murder, kidnapping, aggravated assault, and armed robbery. *Id.* Hollie "was sentenced to aggravated, concurrent prison terms, the longest of which was natural life." *Id.*

### A. Direct Appeal

Hollie timely appealed his convictions to the Arizona Court of Appeals, raising the following claims: (1) the trial court erred in denying his motion to suppress pretrial identifications of him by two other victims; (2) the trial court violated his right to confront witnesses by refusing to exclude two victims from the courtroom during key proceedings; (3) the trial court erred by failing to declare a mistrial when one juror allegedly told another juror that she feared possible retaliation if Hollie were found guilty; and (4) the trial court erred in allowing testimony regarding Hollie's flight from police in a stolen vehicle the day after the murder. *See* Respts.' Exh. "A." Hollie also sought review of *State v. Dumaine*, 162 Ariz. 392, 783 P.2d 1184 (1989), which allows witness testimony from individuals who have received favorable plea agreements from the State. *Id.* at 11.

On June 28, 2001, the Arizona Court of Appeals affirmed Hollie's convictions. *See* Respts.' Exh. "A." Upon review of the record for a showing of "clear and manifest error," the Court of Appeals rejected Hollie's argument that the preliminary hearing, at which two witnesses identified him as "the intruder who had killed J[,]" was a "one-man-show-up." *Id.* at 3. The court held that "[b]ecause the minute entry demonstrates that the trial court found that the prosecutor's actions and the circumstances were not unduly suggestive, we reject

---

[2]Footnote 1 to the Court of Appeal's opinion explains, "J. sold cocaine and apparently hid her drugs and drug paraphernalia in a box in her closet." Respts.' Exh. "A" at 2.

Hollie's argument." *Id.* The court went on to "consider the evidence presented at the *Dessureault*[3] hearing" noting that it could affirm Hollie's convictions if there was a "significant indicia of reliability" surrounding the witnesses identification. *Id.* at 3-4. Based on the totality of the circumstances, the court did not find clear and manifest error in the trial court's refusal to suppress the witnesses' pretrial identification of Hollie. *Id.* at 7. Next, the court found that Hollie was not denied the right to effectively cross-examine victim witnesses simply because they were allowed to attend all of the criminal proceedings. Respts.' Exh. "A" at 8. The court also held that the trial court did not commit fundamental error when is did not declare a mistrial *sua sponte* after excusing a juror because she recognized the name of a witness mentioned during testimony, and expressed a fear of retaliation if Hollie were convicted. *Id.* at 9-10. Hollie further argued that the "trial court denied him a fair trial when it failed to individually ask the jury panel members whether [the excused juror] had said anything to them or whether they had similar fears." *Id.* at 9. The Court of Appeals rejected this argument expressing satisfaction that the trial court had taken "adequate precautions to ensure that the jury was fair and impartial." *Id.* Regarding the testimony regarding Hollie's flight in a stolen vehicle, the court held that it was admissible 1) because Hollie stated to a passenger in the stolen vehicle that he could not stop for police because he "had smoked a b----h last night" and 2) because Hollie elicited the testimony that the vehicle was stolen and therefore could not then complain about its erroneous introduction. *Id.* at 10. Finally, the court declined Hollie's request to revisit the Arizona Supreme Court's decision in *Dumaine* citing its position as an intermediate appellate court and "lack [of] authority to overrule or disaffirm supreme court precedent." Respts.' Exh. "A" at 11.

Subsequently, Hollie filed a petition for review with the Arizona Supreme Court. On December 11, 2001, the Arizona Supreme Court denied review without comment.

. . .

. . .

---

[3]*State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969).

*B.*     *First Post-Conviction Relief Proceeding*

On December 26, 2001, Hollie filed his first notice for post-conviction relief. Respts.' Exh. "C." On June 16, 2003, through his counsel of record, Hollie filed his first petition for post-conviction relief. Respts.' Exh. "D." Hollie claimed, *inter alia*, that 1) the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by failing to disclose evidence of an alleged relationship between Barbara Marvel, the prosecutor's legal assistant, and Michael Hollie, Petitioner's half-brother who testified against Hollie at trial; 2) the prosecutor committed misconduct by allegedly concealing evidence of the relationship between Marvel and Michael Hollie; 3) the alleged relationship between Marvel and Michael Hollie constituted "newly discovered evidence" for purposes of impeachment to undermine the testimony of Michael Hollie and two other witnesses at trial; 4) mistrial due to prosecutorial misconduct will result in double jeopardy protections barring retrial; 5) he was denied his Sixth Amendment right to effective assistance of counsel when his trial attorney, Ralph Ellinwood, failed to call four defense witnesses, two of whom stated that Michael Hollie confessed to killing Jackie DeMoss and two who would have impeached Michael Hollie's credibility; and 6) Hollie was denied his Sixth Amendment right to effective assistance of counsel when his appellate attorney, Roger Weissman, failed to argue on appeal that the trial court erred in denying Petitioner's motion for new trial.

On September 13, 2004, the trial court dismissed Hollie's post-conviction relief petition. Respts.' Exh. "E." The court analyzed the evidence regarding Barbara Marvel's alleged relationship with Michael Hollie pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under the three-part test, the court found 1) evidence of the alleged relationship between Marvel and Michael was favorable to Petitioner because of its impeachment value; 2) that Petitioner had presented a colorable claim that the alleged relationship began prior to trial and that the State failed in its duty to disclose the relationship; and 3) that Petitioner was not prejudiced by the lack of disclosure. *See* Respts.' Exh. "E." The court noted that even if the State had timely disclosed Marvel and Michael Hollie's relationship, it would not have changed the outcome at trial. *Id.* at 8. In support of

this finding, the court determined that evidence of the relationship between Marvel and Michael Hollie would have undermined the credibility of "three witnesses, none of whom were key witnesses." *Id.* Moreover, evidence of the relationship between Marvel and Michael Hollie would have been additional impeachment against Michael Hollie who was already cross-examined regarding his bias. As such, the evidence would have been "cumulative impeachment material against Michael Hollie." *Id.* The court further noted that the "[i]ndependent evidence overwhelmingly pointed to defendant's guilt, particularly the testimony of the two surviving victims that witnessed the murder." *Id.* at 9. Therefore, the court held that Petitioner "failed to raise a colorable claim that the State committed a *Brady* violation. Respts.' Exh. "E" at 10.

The court additionally held that Petitioner's claim of prosecutorial misconduct was "without merit." *Id.* Further, the court determined that the relationship between Marvel and Michael Hollie did not constitute "newly discovered evidence." *Id.* at 10-11. The court also found that double jeopardy principles did not attach because the remedy for a *Brady* violation is a new trial, not dismissal. *Id.* at 11 (citations omitted). Finally, the court analyzed both of Petitioner's ineffective assistance of counsel claims pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court held that Petitioner failed to demonstrate any prejudice as a result of any deficiencies on the part of either trial or appellate counsel. *See* Respts.' Exh. "E" at 12-16. Therefore, Petitioner's ineffective assistance of counsel claims failed. Accordingly, the trial court denied Petitioner's PCR petition. *See id.*

On October 13, 2004, Hollie, through his counsel of record, filed a petition for review by the Arizona Court of Appeals. Respts.' Exh. "F." On appeal Hollie asserted that the trial court erred in its resolution of the following claims 1) the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by failing to disclose evidence of an alleged relationship between Marvel and Michael Hollie, Petitioner's half-brother who testified against Hollie at trial; 2) the prosecutor committed misconduct by allegedly concealing evidence of the relationship between Marvel and Michael Hollie; 3) the alleged relationship between Marvel and Michael Hollie constituted "newly discovered evidence"

for purposes of impeachment to undermine the testimony of Michael Hollie and two other witnesses at trial; 4) mistrial due to prosecutorial misconduct will result in double jeopardy protections barring retrial; 5) he was denied his Sixth Amendment right to effective assistance of counsel when his trial attorney, Ralph Ellinwood, failed to call four defense witnesses, two of whom stated that Michael Hollie confessed to killing Jackie DeMoss and two who would have impeached Michael Hollie's credibility; and 6) Hollie was denied his Sixth Amendment right to effective assistance of counsel when his appellate attorney, Roger Weissman, failed to argue on appeal that the trial court erred in denying Petitioner's motion for new trial.  *See id.*

On August 26, 2005, the Arizona Court of Appeals granted review, but denied relief. Respts.' Exh. "G."  Upon review of the trial court's sixteen (16) page minute entry and pertinent portions of the record, the court of appeals "found support for the trial court's findings and conclusions."  *Id.* at 2.  Hollie did not seek review with the Arizona Supreme Court.

### C.    The Instant Habeas Proceeding

On July 28, 2006, Hollie filed the Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 ("Petition").  Hollie claims five (5) grounds for relief.  First, Hollie asserts that his rights to "due process and equal protection of laws and hearings to a fair trial" pursuant to the Fourteenth Amendment were violated.  Petition at 5. Additionally, Hollie asserts a "conflict of interest" claim.  *Id.*  Hollie alleges that the State's failure to disclose the relationship between the prosecutor's legal assistant, Barbara Marvel, and witness Michael Hollie deprived Petitioner of his"constitutional right to a fair trial."  *Id.*

Second, Hollie asserts a due process violation "to have a fair hearing on identification."  Petition at 6.  Hollie bases this claim on the trial court's refusal to suppress his pre-trial identification by two victim witnesses.

Third, Hollie claims a Sixth Amendment violation based upon "newly discovered evidence." Petition at 7. Hollie asserts that the relationship between Marvel and Michael Hollie constitutes "newly discovered evidence." *Id.*

Fourth, Hollie further asserts that transportation records would have shown that he had been transported to a "live line up" and constitute "newly discovered evidence" in violation of his due process right to a fair trial and fair hearings pursuant to the Fourteenth Amendment. Petition at 8.

Fifth, Hollie asserts ineffective assistance of counsel claims against appellate counsel for his direct appeal. In support of this claim, Hollie argues that "a Motion for a New Trial on the transportation records [was] clearly in favor of the defendant [and] this information was over look [sic] by appeal lawyer." Petition at 8[a].[4]

## II. STANDARD OF REVIEW

The federal courts shall "entertain an application for a write of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States*." 28 U.S.C. § 2254(a) (emphasis added). Moreover, a petition for habeas corpus by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Schriro v. Landrigan*, 550 U.S. 465, — , 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007). Correcting errors of state law is not the province of federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385

---

[4]Petitioner copied page 8 of the government form for his additional claim. The Court has designated this second page 8, containing "Ground V" as page 8[a].

(1991).  Ultimately, "[t]he statute's design is to 'further the principles of comity, finality, and federalism.'" *Panetti v. Quarterman*, — U.S. — , 127 S.Ct. 2842, 2854, 168 L.Ed.2d 662 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S.322, 337, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review.  *See* 28 U.S.C. § 2254.  "The Act limits the ability of federal courts to reexamine questions of law and mixed questions of law and fact."  *Jeffries v. Wood*, 114 F.3d 1484 (9th Cir. 1997).  Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigen*, 550 U.S. at — , 127 S.Ct. at 1940 (citing 28 U.S.C. § 2254(e)(1)).  Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect.  *Id.*, 550 U.S. at —, 127 S.Ct. at 1939.  Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court  applies the principles to the facts before it arrives at a different result.  *See Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *See also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004).

**III.      STATUTE OF LIMITATIONS**

The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody.  28 U.S.C. § 2244(d)(1).  Generally, the limitation period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Section 2244(d)(1) mandates that the one year limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083, 1086 (9th Cir. 2005). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Respondents do not dispute the timeliness of Hollie's Petition. The Court has independently reviewed the record and finds that the Petition is timely pursuant to 28 U.S.C. § 2244(d)(1)(A).

## IV.    EXHAUSTION OF STATE REMEDIES

Prior to application for a writ of habeas corpus, a person in state custody must exhaust all of the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A). This "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). As such, the exhaustion doctrine gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004) (internal quotations omitted). Moreover, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy*, 455 U.S. at 518, 102 S.Ct. at 1203 (internal citations omitted). This upholds the doctrine of comity which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to

pass upon the matter." *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)).

Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as the applicant "has the right under the law of the State to raise, by any available procedure the question presented." 28 U.S.C. § 2254(c). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999), *cert. denied*, 529 U.S. 1009 (2000) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds). Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court." *Id.* at 29, 124 S.Ct. at 1349. "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, §23.3b (4th ed. 1998)).

In Arizona, however, for "cases not carrying a life sentence or the death penalty, review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998). Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not

1    necessary for an applicant to seek collateral relief for the same issues already decided upon

2    direct review. *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380

3    (1989).

4

5    **V.    PROCEDURAL DEFAULT**

6        "A habeas petitioner who has defaulted his federal claims in state court meets the

7    technical requirements for exhaustion; there are no state remedies any longer 'available' to

8    him." *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640

9    (1991). Moreover, federal courts "will not review a question of federal law decided by a

10   state court if the decision of that court rests on a state law ground that is independent of the

11   federal question and adequate to support the judgment." *Id.*, 501 U.S. at 728, 111 S.Ct. at

12   2554. This is true whether the state law basis is substantive or procedural. *Id.* (citations

13   omitted). Such claims are considered procedurally barred from review. *See Wainwright v.*

14   *Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

15       The Ninth Circuit explained the difference between exhaustion and procedural default

16   as follows:

17           The exhaustion doctrine applies when the state court has never been presented
             with an opportunity to consider a petitioner's claims and that opportunity may
18           still be available to the petitioner under state law. In contrast, the procedural
             default rule barring consideration of a federal claim applies only when a state
19           court has been presented with the federal claim, but declined to reach the issue
             for procedural reasons, or if it is clear that the state court would hold the claim
20           procedurally barred. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002)
             (internal quotation marks and citations omitted). Thus, in some circumstances,
21           a petitioner's failure to exhaust a federal claim in state court may *cause* a
             procedural default. *see Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002);
22           *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally
             defaulted 'if the petitioner failed to exhaust state remedies and the court to
23           which the petitioner would be required to present his claims in order to meet
             the exhaustion requirement would now find the claims procedurally barred.'"
24           (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 115
             L.Ed.2d 640 (1991))).
25
     *Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005). Thus, a prisoner's habeas petition
26
     may be precluded from federal review due to procedural default in two ways. First, if the
27
     petitioner presented his claims to the state court, which denied relief based on independent

28
                                            - 11 -

and adequate state grounds. *Coleman*, 501 at 728, 111 S.Ct. at 2254. Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.* Second, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1, 111 S.Ct. at 2557 n.1 (citations omitted). Thus, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quoting *Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (emphasis in original).

Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result. *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial."). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims."). In addition to cause, a habeas petitioner must show actual prejudice, meaning that he "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494, 106 S.Ct. at 2648 (emphasis in original) (internal quotations

omitted). Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.*, 106 S.Ct. at 2649.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'" *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (quoting *Engle v. Isaac* 456 U.S. 107, 135, 102 S.Ct. 1558, 1572-73, 71 L.Ed.2d 783 (1982)). "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'" *Herrara v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)). Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404, 113 S.Ct. at 862. Further, in order to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial, on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(3). "If an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly, voluntarily and intelligently' waived the claim." *Id.*, 2002 cmt. Neither Rule 32.2 nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver. *See id.*; *See also Stewart v. Smith*, 202 Ariz. 446, 46 P.3d 1067 (2002). The Ninth Circuit recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations." *Cassett*, 406 F.3d at 622.

## VI. *BRADY* **VIOLATION**

      A.    *Ground One: <u>Brady</u> Violation Based on the State's Failure to Disclose the Alleged Relationship Between Barbara Marvel and Michael Hollie*

Hollie asserts that his due process rights were violated when the State failed to disclose the existence of a romantic relationship between the prosecutor's legal assistant, Barbara Marvel, and witness Michael Hollie. A petition for habeas corpus by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Schriro v. Landrigan*, 550 U.S. 465, — , 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007). Hollie initially raised this claim in his first petition for post-conviction relief. Rspts.' Exh. "D." In consideration of that petition, the trial court analyzed the evidence regarding Barbara Marvel's alleged relationship with Michael Hollie pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under the three-part test, the court found 1) evidence of the alleged relationship between Marvel and Michael was favorable to Petitioner because of its impeachment value; 2) that Petitioner had presented a colorable claim that the alleged relationship began prior to trial and that the State failed in its duty to disclose the relationship; and 3) that Petitioner was not prejudiced by the lack of disclosure. *See* Rspts.' Exh. "E." The court noted that even if the State had timely disclosed Marvel and Michael Hollie's relationship, it would not have changed the outcome at trial. *Id.* at 8. In support of this finding, the court determined that evidence of the relationship between Marvel and Michael Hollie would have undermined the credibility of "three witnesses, none of whom were key witnesses." *Id.* Moreover, evidence of the relationship between Marvel and Michael Hollie would have been additional impeachment against Michael Hollie who was already cross-examined regarding his bias. As such, the evidence would have been "cumulative impeachment material against Michael Hollie." *Id.*

The court further noted that the "[i]ndependent evidence overwhelmingly pointed to defendant's guilt, particularly the testimony of the two surviving victims that witnessed the murder." *Id.* at 9. Therefore, the court held that Petitioner "failed to raise a colorable claim that the State committed a *Brady* violation. Respts.' Exh. "E" at10. Subsequently, the Arizona Court of Appeals upheld the trial court's determination. Respts.' Exh. "G."

"There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). The trial court properly enunciated the rule in its consideration of Hollie's claim. *See* Respts.' Exh. "E." Based upon the facts present in this case, the trial court determined that although evidence of a relationship between Marvel and Michael Hollie was favorable to Petitioner because of its impeachment value and that the State had failed to disclose the evidence, Petitioner Hollie's claim must ultimately fail because of a lack of prejudice. *See id.* This determination is not unreasonable "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Indeed the United States Supreme Court has delineated the question of prejudice as "whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Strickler*, 527 U.S. at 289, 119 S.Ct. at 1952, 144 L.Ed.2d. 286 (internal quotations omitted). The trial court based its decision on 1) the impeachment evidence against Michael Hollie was cumulative and 2) the independent evidence, including the testimony of two victim witnesses, would be unaffected by the additional evidence. The trial court properly analyzed the evidence before it in light of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). As such, Hollie's claim for a due process violation in light of *Brady* is without merit.

. . .

. . .

. . .

## VII. WITNESS IDENTIFICATION OF PETITIONER

Hollie asserts a due process violation "to have a fair hearing on identification." Petition at 6. Hollie bases this claim on the trial court's refusal to suppress his pre-trial identification by two victim witnesses because it occurred at a preliminary hearing rather than a line up. *Id.* The trial court held a *Dessureault* hearing and determined that the "prosecutor's actions and the circumstances were not unduly suggestive."[5] Respts.' Exh. "A" at 3. This determination was affirmed by the Arizona Court of Appeals. *Id.*

A due process claim arises when a "defendant could claim that 'the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.'" *Neil v. Biggers*, 409 U.S. 188, 196, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972) (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02, 87 S.Ct. 1967, 1972). This determination must be made on a "totality of the circumstances." *Id.* The United States Supreme Court articulated several factors for determining whether "the identification was reliable even though the confrontation procedure was suggestive." *Neil*, 409 U.S. at 199, 93 S.Ct. at 388, 34 L.Ed.2d 401. These include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.*

In the instant case, the Arizona Court of Appeals weighed the evidence presented to the trial court during the *Dessureault* hearing pursuant to *Neil*. Respts.' Exh. "A" at 4-7. The appellate court considered the testimony of the witnesses, one of whom looked at Hollie for "a minute or so," and one whom although had only seen Hollie's face for a few seconds, she had gotten a "good look" at his face and felt as if "time froze" when she was looking at

---

[5]Under *Dessureault* a trial court is required to hold a hearing "to determine from clear and convincing evidence whether [pretrial identification procedures] contained unduly suggestive circumstances." *State v. Dessureault*, 104 Ariz. 380, 384, 453 P.2d 941, 955 (1969).

him. Respts.' Exh. "A" at 4; Respts.' Exh. "L" at 59, 62, 93.  The appellate court agreed with the trial court's finding that "the witnesses' opportunity to view the intruder who shot [J.] was adequate to allow them to testify to their impression." Respts.' Exh. "A" at 5 (quoting trial court's minute entry); *See also Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (holding a fleeting but "real good look" at assailant in the headlights of a passing car admissible).

The appellate court rejected Hollie's argument that the witnesses were distracted by his weapon and their attention was not riveted upon him. Respts.' Exh. "A" at 5.  The appellate court correctly held that there is no evidence in the record to support Hollie's argument regarding the presence of the weapon. *Id.*  Moreover, it correctly noted that there is no "minimum level of attention" requirement. *Id.*  As such, the trial court's finding that "the witnesses' attention to the perpetrator was as one could expect under the circumstances of the case" is without error. *Id.*

The appellate court found that although the witnesses' prior descriptions of Hollie differed with respect to his attire, their descriptions of his physical characteristics were similar. *Id.* at 6.  Furthermore, the lead detective testified that her initial reaction to Hollie's appearance was that he "looks just like the guy they described." Respts.' Exh. "A" at 6.  The appellate court found that the witnesses' "prior description of the intruder were [not] fatal to the admission of their pretrial identifications." *Id.*

The appellate court determined that the witnesses exhibited a sufficient level of certainty regarding their identification of Hollie. *Id.*  Both had "strong emotional and physical reactions when they saw Hollie for the first time after the murder." *Id.*  The record supports such a conclusion. *See* Respts.' Exh. "L."

Finally, the appellate court held that the seven months that had elapsed between the incident and the pretrial identification was not too long. Respts. Exh. "A" at 7.  This is consistent with the United States' Supreme Court's finding in *Neil*, in which seven (7) months elapsed between the incident and confrontation. *Neil*. 409 U.S. at 201, 92 S.Ct. at 383.

In light of the foregoing, and "weighing all the factors, [this Court] finds no substantial likelihood of misidentification." *Id.* The state courts properly analyzed the evidence in light of established federal law. 28 U.S.C. § 2254(d). Accordingly, Hollie is not entitled to habeas relief.

## VIII. NEWLY DISCOVERED EVIDENCE

### A. *Ground Three: Alleged Relationship Between Marvel and Michael Hollie as "Newly Discovered Evidence"*

Hollie claims a Sixth Amendment violation based upon "newly discovered evidence." Petition at 7. Hollie asserts that the relationship between Marvel and Michael Hollie constitutes "newly discovered evidence." *Id.* Respondents properly argue that this claim was originally presented to the state court solely as a violation of state law. *See* Answer to Petition for Writ of Habeas Corpus ("Answer") [Doc. #18] at 8. Prior to bringing a claim to federal court, a habeas petitioner must present all claims first to the state court. *Rose v. Lundy*, 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982). The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition. *Baldwin v. Reese*, 541 U.S. 27, 33, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and the justices having the opportunity to read a lower court decision addressing the federal claims was not fair presentation); *Hivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999), *cert. denied*, 529 U.S. 1009 (2000) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds).

In the instant case, Hollie failed to alert the state court to a federal due process issue based on a "newly discovered evidence" theory. This claim was presented to the state court solely as an issue of state law. *See* Respts.' Exh. "D" at 20. As such, Hollie has failed to exhaust his claim before the state court and is not entitled to federal habeas relief.

### B. Ground Four: Alleged Due Process Violation Regarding Transportation Records

Fourth, Hollie further asserts that transportation records would have shown that he had been transported to a "live line up" and constitutes "newly discovered evidence" in violation of his due process right to a fair trial and fair hearings pursuant to the Fourteenth Amendment. Petition at 8. This issue was originally asserted in Hollie's first petition for post-conviction relief, as part of his ineffective assistance of trial counsel claim. *See* Respts.' Exh. "D" at 30-4. In its September 13, 2004 order, the trial court acknowledged Hollie's argument, but found that the motion for new trial was filed twelve (12) days after the entry of judgment and was therefore untimely pursuant to Rule 24.1(b), Arizona Rules of Criminal Procedure.[6] Respts.' Exh. "E" at 15. Accordingly, the trial court lacked jurisdiction to entertain the issue of the transportation records. *Id.* at 16.

Hollie's claim regarding the transportation records is therefore procedurally defaulted. Hollie presented his claim to the state court, which denied relief based on independent and adequate state grounds. *See Coleman*, 501 at 728, 111 S.Ct. at 2254. The trial court recognized that it was barred from entertaining Hollie's claim because the motion for a new trial was untimely. Respts.' Exh. "E" at 15-6. This state procedural bar to review now prohibits this Court from review because the "state law determination [] is sufficient to support the judgment, [and] resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Coleman*, 501 at 728, 111 S.Ct. at 2254.

### IX. INEFFECTIVE ASSISTANCE OF COUNSEL

Hollie's fifth claim regarding the ineffective assistance of his appellate counsel, Mr. Roger Weissman, were properly raised in his first PCR petition, on appeal of that petition

---

[6]The rule states that "[a] motion for a new trial shall be made no later than 10 days after the verdict has been rendered." Ariz. R. Crim. P. 24.1(b).

to the Arizona Court of Appeals and in his current habeas petition. As such, he has properly exhausted this claim in the state court system.

The Supreme Court elucidated a two part test for determining whether a defendant could prevail on a claim of ineffective assistance of counsel sufficient to overturn his conviction. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, Hollie must show that counsel's performance was deficient. *Id.* at 687, 104 S.Ct. at 2064. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, Hollie must show that this performance prejudiced his defense. *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.* Ultimately, whether or not counsel's performance was effective hinges on its reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *See also State v. Carver*, 160 Ariz. 167, 771 P.2d 1382 (1989) (adopting *Strickland* two-part test for ineffective assistance of counsel claims). The Sixth Amendment's guarantee of effective assistance is not meant to "improve the quality of legal representation," rather it is to ensure the fairness of trial. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* Judging counsel's performance must be made without the influence of hindsight. *See id.* As such, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955). Without the requisite showing of either "deficient performance" or "sufficient prejudice," Hollie cannot prevail on his ineffectiveness claim. *Strickland*, 466 U.S. at 700, 104 S.Ct. at 2071.

Here, Hollie asserts that Mr. Weissman provided ineffective assistance by failing to argue that the trial court erred in denying Hollie's motion for a new trial. Petition at 8a. This motion "claimed that the prisoner transportation records of the Pima County Sheriff's Department were altered to conceal the alleged fact that there was an undisclosed time that

Petitioner was viewed by [witness] Mason prior to the pretrial hearing." Respts.' Exh. "E" at 15. The trial court held that Hollie's motion for a new trial was untimely pursuant to Rule 24.1(b), Arizona Rules of Criminal Procedure. *Id.* As such, the court lacked jurisdiction to consider the motion. *Id.* at 15-6.

Hollie has failed to present any evidence suggesting that Mr. Weissman's decision not to appeal the trial court's finding was unreasonable. "[T]he failure to take a futile action can never be deficient performance." *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996). The procedural bar delineated by Rule 24.1(b), Arizona Rules of Criminal Procedure, is explicit. Mr. Weissman's failure to raise a meritless issue does not constitute deficient performance. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."). Without deficient performance, Hollie's ineffective assistance of counsel must fail.[7]

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Petition for Writ of Habeas Corpus [Doc. #1] pursuant to 28 U.S.C. § 2254 is DENIED;

2. All other pending motions are DENIED AS MOOT;

3. This matter is DISMISSED with prejudice; and

4. The Clerk of the Court shall enter judgment and shall then close its file in this matter.

DATED this 29th day of September, 2009.

_____
Cindy K. Jorgenson
United States District Judge

---

[7]Additionally, the Court finds that Hollie failed to demonstrate sufficient prejudice to warrant a finding of ineffective assistance of counsel. Nothing before this Court suggests that Hollie did not receive "a fair trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.